## DUTY OF PEDESTRIAN AT STREET CROSSING OF SEVERAL RAILWAY TRACKS.

Circuit Court of Cuyahoga County.

NICOLA CERRI (SUBSTITUTED FOR GAETANO LIOTTA), AS ADMINISTRATOR OF BIAGIO SIDOTI, DECEASED, v. THE ERIE RAILROAD COMPANY.*

Decided, December 17, 1909.

*Railway Crossing—Pedestrian to Look Both Ways at Each Track.*

A pedestrian crossing several railroad tracks at a street crossing should look both ways just before going upon each track, if there is time so to do.

*H. F. Payer* and *J. V. Zollerelli,* for plaintiff in error.
*Cushing & Siddall,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This was an action for wrongful death. Sidoti was killed at the Broadway crossing of the Erie Railroad in the city of Cleveland. At that point Broadway runs substantially north and south and the tracks of the railroad company run east and west. There are five tracks at this point. Proceeding from the south, as Sidoti did, the first track is a switch, or coal spur, the next a siding, then comes the east-bound main track, next the west-bound main track and last a switch or siding. Gates are maintained at this crossing, operated from a tower on the east side of Broadway, north of the tracks. These gates, one south of the tracks and the other north of the tracks, are hinged on the east side of the street; when let down they extend over to the west side across the street.

Just before this fatality occurred the gates were down and Sidoti stood on the west sidewalk of Broadway with other persons, waiting for a train going west on the fourth track from

*Affirmed without opinion, *Cerri, Admr.,* v. *Milvale Goshen Coal Co.,* 85 Ohio State, 444.

him, to cross the street.    Immediately to the west of him on the first switch were two box cars which obstructed his view in that direction.

Following the west bound freight train on the fourth track was a caboose, traveling west by gravity and about one hundred and fifty feet behind the freight train.

There is evidence tending to show that before this caboose crossed the street and while it was in full view of Sidoti, the gate was raised, Sidoti started north and then the gate was again lowered behind him.    At least, such is the claim of the plaintiff in error.

Sidoti was killed by a train coming from the west.    His administrator claimed that this train was on the second track, or siding; the company claimed that it was on the third, or eastbound main track.    There being a conflict in the evidence on this point, the court submitted the case to the jury charging however, among other things, as follows:

"And here I say to you, that plaintiff claims that decedent was injured by the engine while it was running on the switch track or long siding; while defendant claims that the engine was running on the east-bound main track.    If you find that the engine that struck Sidoti was running on the east-bound main track as claimed by the defendant, the plaintiff could not recover, as I say to you that it is undisputed from the evidence that the space between the coal spur track and the east-bound main track (eighteen or nineteen feet), is such that if the decedent had exercised ordinary care for his own protection, in other words, if the decedent had looked and listened, he would have seen this engine in time to have avoided being struck by it, and not to have seen it and avoided it would be such negligence as to bar recovery in this case."

The jury brought in a verdict for the defendant and so we have it settled for the purposes of this case, that the train which killed Sidoti was on the third track.    As stated by the court, the distance between the first track and the third track was eighteen or nineteen feet.    It is claimed, however, that the distance between the north side or overhang of the box car on the first track and the south side, or overhang of the engine on the third track, was only fifteen feet.    While traveling this distance

Sidoti had a clear and unobstructed view of the train approaching from the west and could have seen it in ample time to avoid the accident, if he had looked. He may not have heard it because of the rumble of the west-bound freight on the fourth track.

The sole question, however, for review in this case is whether, under the circumstances, Sidoti was negligent in not looking to the west that the court was warranted in finding, as a matter of law, that he thereby contributed to his own injury, and that there could be no recovery.

The case of *Railway Company* v. *Schneider*, 45 Ohio St., 678, is relied upon for a reversal of this case. The third paragraph of the syllabus of that case is as follows:

"When gatemen are maintained at such crossings, it is their duty to observe the tracks and know when, on account of trains or engines thereon it becomes dangerous for persons to cross, and when it is so, to close the gates and keep them closed to prevent persons from going upon the tracks so long as the danger continues; and when the tracks are clear, or persons may cross without danger from passing cars and locomotives, then to open the gates and keep them open to enable persons to cross, so long as it is safe for them to do so, but no longer. Persons approaching the crossing or about to cross have a right to presume, in the absence of knowledge to the contrary, that the gatemen are properly discharging their duties, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gatemen of their duties. Hence an open gate with the gateman in charge is notice of a clear track and safe crossing, and in the absence of other circumstances, when the gates are open and the gatemen present, it is not negligence in persons approaching the crossing with teams to drive at a trot, or to pass on to the tracks through the open gates without stopping to listen, though the view of the tracks on either side of the crossing is obstructed; nor in such case is their failure, when at a distance of twenty-five feet from the track, to look for locomotives one hundred and fifty feet or more from the crossing, negligence, though they could have been seen."

It will be noticed that the Schneider case formulates the law for persons driving teams across railroad crossings, and holds that it is not negligence for persons approaching the crossing with

teams to drive at a trot, or pass onto the tracks through the open gates without stopping to listen; nor in such case is their failure, when at a distance of twenty-five feet from the track, to look for locomotives one hundred and fifty feet or more from the crossing, negligence, though they could have been seen.

We apprehend that this rule is applicable only to persons with teams or other motive power, more or less difficult to control. A pedestrian can stop short in his tracks; not so with horses on a trot.

At least, if the same rule is to be applied to pedestrians—it is proper that the court which finally settles the law should say so, for the syllabus of the Schneider case very carefully limits it to persons with teams, and we can not overlook that fact.

There is another reason why the Schneider case does not rule this case. It is there held that, "Persons approaching the crossing or about to cross have the right to presume, *in the absence of knowledge to the contrary,* that the gatemen are properly discharging their duties," and again: "Hence an open gate with the gatemen in charge is notice of a clear track and safe crossing, *in the absence of other circumstances.*"

What were the circumstances here?

The brief of counsel for plaintiff in error says: "The almost undisputed testimony is that his (Sidoti's) attention was drawn toward a caboose that was approaching Broadway on the westerly bound main track." Then he saw that it was approaching when the gate went up and knew that the gateman was not properly discharging his duty; he had knowledge to the contrary. In the light of this circumstance the open gate was not notice of a clear track and safe crossing. Such being the case, he went into a dangerous place, not only without invitation but in the face of one known danger, and neglected to look for the other danger "just before going upon the track," which is the time to look. *Railroad Company* v. *Kistler,* 66 Ohio St., 326. This means that where there is more than one track, one should look both ways just before going upon each track, if there is time so to do. "The train has the right of way on each track." This is so because the person can stop within a few feet, and the train can not. Sidoti could not see to the west before he crossed

the first track, because of the box cars on it. Had he looked before he crossed the second track he would have seen the train in ample time to avoid it. That was the first time he was called upon to look; for it was the first time he could see in that direction; the approaching train was upon the third track. He was then struck because he did not look to the west.

There seems no explanation of this accident, but his own negligence.

Judgment affirmed.